---

## APPEAL NO. 23-4313

---

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

v.

MICHAEL HENDERSON,

Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

---

### BRIEF OF APPELLANT MICHAEL HENDERSON

---

Wesley P. Page
Federal Public Defender

Jonathan D. Byrne
Appellate Counsel

U. S. Courthouse, Room 3400
300 Virginia Street East
Charleston, West Virginia  25301
Telephone: 304/347-3350

*Counsel for Appellant*

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION ..................................................... 1

ISSUES FOR REVIEW ....................................................................... 1

STATEMENT OF CASE....................................................................... 2

      A.    Henderson is intercepted while carrying a large amount of methamphetamine and pleads guilty to possessing it with intent to distribute. .......................................................... 2

      B.    The Government belatedly argues for Guideline enhancements after the PSR process is completed. ........................... 4

      C.    Henderson is sentenced to 188 months in prison. .............................. 8

SUMMARY OF ARGUMENT .............................................................. 10

ARGUMENT ........................................................................................ 11

      I.    The district court abused its discretion by considering untimely Government objections to the advisory Guideline range calculated in the PSR without a demonstration of good cause for the delay......................................... 11

            A.    Standard of Review.................................................... 11

            B.    The district court's consideration of the Government's untimely arguments did not comply with the Rules of Criminal Procedure. ....................... 12

      II.    The district court clearly erred by concluding that Henderson exercised dominion and control over the firearms seized from Cagle and therefore constructively possessed them, imposing a two-level Guideline enhancement as a result. ........................................................ 19

i

A.    Standard of Review ................................................... 19

B.    Possession of a firearm to support an enhancement under U.S.S.G. § 2D1.1(b)(1) can be constructive, if the evidence shows the defendant exercised dominion and control over that firearm. ............................... 19

C.    The evidence does not show that Henderson exercised dominion and control over a firearm in connection with a drug trafficking offense. ........................ 21

D.    The district court's error impacted Henderson's sentence. .... 23

CONCLUSION ......................................................................... 24

REQUEST FOR ORAL ARGUMENT ...................................................... 24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

## <u>Cases</u>

*United States v. Aguilar-Ibarra*, 740 F.3d 587 (11th Cir. 2014) ................................... 16

*United States v. Angeles-Mendoza*, 407 F.3d 742 (5th Cir. 2005) ................................ 12

*United States v. Apple*, 962 F.2d. 335 (4th Cir. 1992) ................................................... 20

*United States v. Banks*, 10 F.3d 1044 (4th Cir. 1993) ................................................... 19

*United States v. Booker*, 543 U.S. 220 (2005) ........................................................ 11, 19

*United States v. Chung*, 261 F.3d 536 (5th Cir. 2001) ................................................... 17

*United States v. Clay*, 376 F.3d 1296 (11th Cir. 2004) ................................................. 20

*United States v. Eastteam*, 426 F.3d 1301 (10th Cir. 2005) ......................................... 16

*United States v. Hargrove*, 478 F.3d 195 (4th Cir. 2007) ............................................ 19

*United States v. Hodgkiss*, 960 F.3d 1110 (8th Cir. 2020) ............................................ 17

*United States v. Jones*, 60 F.4th 230 (4th Cir. 2023) ............................................. 5, 6, 14

*United States v. Kleinman*, 880 F.3d 1020 (9th Cir. 2017) ........................................... 12

*United States v. Lindsey*, 827 F.3d 733 (8th Cir. 2016) ................................................ 16

*United States v. Manigan*, 592 F.3d 621 (4th Cir. 2010) ............................................. 20

*United States v. Moye*, 454 F.3d 390 (4th Cir. 2006) ................................................... 20

*United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007) ........................................... 11, 19

*United States v. Rusher*, 966 F.2d 868 (4th Cir. 1992) ................................................. 20

*United States v. Wheeler*, 322 F.3d 823 (5th Cir. 2003) ............................................... 16

## Federal Statutes

18 U.S.C. § 3231 ................................................................................. 1

18 U.S.C. § 3553(f) ........................................................................... 5

18 U.S.C. § 3553(f)(2)...................................................................... 17

18 U.S.C. § 3553(f)(4)................................................................... 7, 17

18 U.S.C. § 3553(f)(5)...................................................................... 17

18 U.S.C. § 3742 .............................................................................. 1

21 U.S.C. § 841(a)(1) ....................................................................... 1

28 U.S.C. § 1291 ............................................................................. 1

## Rules

Fed. R. App. P. 34(a)....................................................................... 25

Fed. R. Crim. P. 32 ........................................................... 12, 15, 16, 24

Fed. R. Crim. P. 32(f)(1) ................................................................. 12

Fed. R. Crim. P. 32(f)(2) ................................................................. 12

Fed. R. Crim. P. 32(f)(3) ................................................................. 12

Fed. R. Crim. P. 32(g) .................................................................... 23

Fed. R. Crim. P. 32(i)(1)(D)............................................................ 12

## Guidelines

U.S.S.G. § 2D1.1 cmt. n.3............................................................... 20

U.S.S.G. § 2D1.1(b)(1) ..............................................................2, 19, 20

## STATEMENT OF JURISDICTION

On March 29, 2022, an indictment was filed in the Southern District of West Virginia charging Michael Henderson with possession with intent to distribute 500 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1). JA009. On November 17, 2020, a superseding indictment was returned charging Henderson with the same offense. JA010. Because that charge constitutes an offense against the United States, the district court had original jurisdiction pursuant to 18 U.S.C. § 3231. This is an appeal from the final judgment and sentence imposed after Henderson pleaded guilty to the charge in the superseding indictment. JA011-014. A judgment order was entered on April 21, 2023. JA106-113. Henderson timely filed a notice of appeal on May 3, 2023. JA114. The United States Court of Appeals for the Fourth Circuit has jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## ISSUES FOR REVIEW

1.      Whether the district court abused its discretion by allowing the Government to make new arguments in support of several Guideline enhancements raised after the deadline for such arguments had passed and without any good cause shown for such delay and then considering those arguments when calculating the advisory Guideline range.

1

2.    Whether the district court clearly erred by concluding that Henderson constructively possessed firearms so as to support a two-level enhancement under U.S.S.G. § 2D1.1(b)(1).

## STATEMENT OF CASE

This case arose from the stop of a taxi in which Henderson was a passenger and the discovery of a large amount of methamphetamine following a search of the taxi. At issue is whether the district court should have entertained (and ultimately ruled in favor of) untimely Government arguments that Henderson should be subject to Guideline enhancements for possessing a firearm and for being a leader or organizer of others.

### A.    Henderson is intercepted while carrying a large amount of methamphetamine and pleads guilty to possessing it with intent to distribute.

On March 3, 2022, Henderson arrived in Charleston, West Virginia, by bus and got into a waiting taxi. Police stopped the taxi and, after discussions with the driver and Henderson, searched the taxi. The items searched included a duffle bag Henderson had brought with him from the bus, in which police found five bags containing a total of approximately five pounds of methamphetamine. JA118. Testing later confirmed that the bags contained 2.3 kilograms of crystal methamphetamine or "ice." JA119.

While Henderson was detained in the regional jail (but prior to federal charges being brought), investigators obtained recordings of phone calls Henderson made to various people. JA120-121. Some calls included terms, such as "sockets" and "tools," which investigators interpreted as being code for drugs. In one call, Henderson told Bonnie Cagle to give "five socket sets to someone that was working in the sand." JA120. In another, Henderson instructed Cagle to tell someone else that "the train is going to be back on track" and instructed her on how to cut methamphetamine for sale. JA121. Finally, in another call, Henderson asked Cagle about "his black and silver 'puppies,'" and told her to give his brother the "silver puppy" and "leave the black one inside." *Ibid.* Investigators believed that "puppies" was code for firearms. *Ibid.* An interview with Cagle confirmed the meaning of the code words used during the phone calls and resulted in Cagle giving investigators two guns, neither of which were the "puppies" referenced by Henderson. JA122.

As a result of the investigation, Henderson was charged with possessing 500 grams or more of a mixture containing methamphetamine with the intent to distribute it. JA009-010.[1] Henderson pleaded guilty to that offense without a plea agreement. JA011-014; JA117. In its order memorializing Henderson's guilty plea,

---

[1] The only difference between the original indictment and the superseding indictment is that the initial one did not specify the statute allegedly violated in the body of the indictment itself. JA009-010.

the district court set December 1, 2022, as the deadline for the draft Presentence Investigation Report ("PSR") to be prepared, with objections due on December 15, 2022. The order clearly stated – in all caps and bold type – that those deadlines could only be altered by the court and would only be changed "upon good cause shown." JA013.

### B. The Government belatedly argues for Guideline enhancements after the PSR process is completed.

Following Henderson's guilty plea a Presentence Investigation Report ("PSR") was prepared to assist the district court at sentencing. JA115-139. As originally calculated, the probation officer recommended Henderson's base offense level be 32, treating the methamphetamine seized as mixture, rather than ice, as no lab reports had been returned as to the purity involved. The probation officer also recommended a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm during the offense. JA061. In a letter to the probation officer dated December 29, 2022, Henderson objected to the two-level enhancement. JA071-073. He argued that it relied on Cagle being a credible witness and she was not, therefore "the Government has not demonstrated by a preponderance of the evidence that Henderson possessed any guns" and, even if it had, "it has not demonstrated that the possession was in connection with drug trafficking activity." JA072.

4

Two orders extended the deadlines in the district court's original scheduling order, both based on motions filed by the Government.[2] The first, entered on December 12, 2022, directed the Government to file any objections by March 2, 2023, while also extending the deadline for sentencing memoranda to be filed to March 23, 2023. JA015-016. The second, entered on January 12, 2023, granted the Government's motion as to the sentencing hearing, but denied it with regard to other deadlines, leaving those in place. JA017-018.

A revised PSR was provided to the parties on March 14, 2023, which sustained Henderson's objection and did not recommend the two-level firearm enhancement. JA062. The parties filed sentencing memoranda based on the revised PSR on March 23, 2023. Henderson argued for a sentence of 120 months in prison, the mandatory minimum and a slight variance from the then-calculated advisory Guideline of 121 to 151 months in prison. JA019; JA020. The Government argued for a sentence "at the top end of the advisory guideline range." JA028. It did not present any objections to the then-calculated advisory Guideline range.

On March 24, 2023, the district court entered an order to allow the parties to address whether Henderson qualified for relief under the "safety valve" provision of 18 U.S.C. § 3553(f) in the wake of this Court's decision in *United States v. Jones*,

---

[2] The motions were based on medical needs of Government counsel and were not objected to by Henderson.

60 F.4th 230 (4th Cir. 2023). JA030-031. The district court stated that "[a]lthough the PSR did not recommend enhancements related to firearms or a leadership or managerial role, and did recommend an acceptance of responsibility reduction, based on the facts in the PSR surrounding those issues, the Court finds it is appropriate to give the parties the opportunity to address (a) the implications of *Jones* and (b) whether Mr. Henderson meets the remaining safety valve criteria." JA030.

The parties filed supplemental memoranda on April 7, 2023. In its memorandum, the Government, for the first time, argued not only that Henderson was not eligible for relief under the safety valve, but that his advisory Guideline range should be enhanced two levels for possession of a firearm and two levels for being a manager or leader of criminal activity, as well as arguing Henderson should be denied any reduction for acceptance of responsibility. JA033-037. As a result, the Government argued that Henderson's advisory Guideline range should be 262 to 327 months in prison, although it did not suggest what the appropriate sentence for Henderson would be. JA037. Henderson argued that he qualified for the safety valve and should be sentenced to 100 months in prison. JA047. As to the Guideline calculations, Henderson argued that the Government had waived its right to assert any objections to the Guideline calculations at that point because it had failed to make timely objections pursuant to the district court's scheduling orders. JA042.

6

On April 17, the district court entered an order resolving the issues raised by the supplemental briefing. JA049-059. The district court held that it could consider the Government's Guideline arguments, as a "party's failure to advance an argument does not prevent the Court from calculating a Guideline range that may differ from that proposed by Probation in the PSR or by either party." JA053. In a footnote, the district court noted that Henderson had taken the opportunity to argue that the safety valve applied, after not objecting to its absence in the PSR, and "[a]ccepting the 'waiver' argument and treating the parties equally would, therefore, result in no consideration of [Henderson]'s eligibility for the safety valve." *Ibid.*

On the merits, the district court concluded that the two-level firearm enhancement should apply. Henderson had "not disputed the facts in the PSR," which the district court construed to show that "he instructed someone to give his brother a black gun to leave in the house and silver gun to carry with him." JA053-054. That person was "also managing his drug business," thus supporting the enhancement. JA054. The district court also concluded that "the facts in the PSR support the conclusion that Mr. Henderson managed or supervised others in his drug distribution activity related to his offense," supporting a two-level enhancement. JA056. Because such an enhancement applied, Henderson was excluded from safety valve relief under 18 U.S.C. § 3553(f)(4) "because this provision explicitly ties eligibility to the Guidelines determination of whether a

person was an organizer, leader, manager, or supervisor of others." *Ibid*. Finally, the district court overruled the Government's objection to Henderson receiving a reduction for acceptance of responsibility. JA057.[3]

On the eve of sentencing, Henderson filed a motion for leave to file a second supplemental sentencing memorandum. In the motion itself, Henderson set forth the procedural background of the preparation of the PSR and various objections to it. JA060-064. Attached to the motion was a supplemental sentencing memorandum that restated Henderson's request for a 120-month sentence, with additional argument as to why the district court should reject the advisory Guideline range due to inherent flaws in the Guideline treatment of methamphetamine. JA065-069. Also attached to the motion was a copy of Henderson's letter to the probation officer containing his objections to the initial PSR, including an argument that the two-level gun enhancement should not apply. JA070-074.[4]

**C.      Henderson is sentenced to 188 months in prison.**

Sentencing for Henderson was held on April 20, 2023. JA075-105. Based on its rulings and the final revised PSR, the district court concluded that Henderson's

---

[3] The final revised PSR, prepared before the district court's ruling, recalculated the base offense level after testing revealed the purity of the methamphetamine, producing a base offense level of 36. JA124.

[4] Although the district court did not enter an order granting Henderson's motion for leave, at sentencing it confirmed that "I have also reviewed the defendant's second supplemental memorandum which was filed on yesterday evening." JA083.

final offense level was 37 and his Criminal History Category IV, producing an advisory Guideline range of 292 to 365 months in prison. The district court also noted that "for purposes of meth which is not considered to be ice, the applicable advisory guideline range is 188 to 235 months." JA082.

The Government argued that a sentence "within the guidelines is appropriate." JA084. It emphasized Henderson's "lengthy criminal history and the continued nature of his criminal conduct," noting that Henderson had "served significant terms of incarceration" and was "on parole at the time he committed to this offense" and "none of that has deterred him from continuing to engage in criminal conduct." *Ibid.* Henderson noted the district court's "prior history of disagreeing with the ice/meth disparity and varying downward" as well as the fact that the Guideline enhancements imposed would not only increase Henderson's Guideline range but would impact "his ability to get time off his sentence while in BOP custody." JA085. In conclusion, Henderson argued that while the Guideline calculations had changed since the initial PSR was prepared, "the facts and circumstances of the case have not changed" and a 120-month sentence was still appropriate. *Ibid.*

The district court imposed a sentence of 188 months in prison, followed by a five-year term of supervised release. JA094.

## SUMMARY OF ARGUMENT

This Court should vacate Henderson's sentence for two reasons. First, the district court abused its discretion by considering objections to the advisory Guideline calculations made by the Government months after the initial PSR was prepared and after foregoing multiple occasions to raise such objections. When it finally made its objections, the Government did not attempt to argue, much less show, any good cause that excused its delay. The district court's order requesting the parties to file supplemental memoranda on the issue of whether Henderson was eligible for safety valve relief was not an open invitation to revisit the calculation of the Guidelines. The district court should have disregarded the Government's untimely arguments and calculated the Guidelines accordingly. Failure to do so was an abuse of discretion that led to the imposition of a procedurally unreasonable sentence.

In addition, the district court clearly erred by concluding that a two-level enhancement for possession of a firearm should be imposed in this case. No firearm was recovered from Henderson when he was arrested, nor was any evidence presented that Henderson carried a firearm with him during any drug trafficking activity. Constructive possession could only be inferred from vague telephone conversations between Henderson and Cagle, bolstered by Cagle's subsequent interview with police. However, Cagle's statements to police were made in an

10

inherently coercive environment and led to the recovery of two firearms that did not match the descriptions of the firearms allegedly discussed with Henderson. As a result, there is insufficient evidence from which the district court could conclude that Henderson constructively possessed firearms in connection with his drug trafficking offense. It clearly erred in concluding otherwise. That error led to the incorrect calculation of the advisory Guideline range, leading to the imposition of a procedurally unreasonable sentence that must be vacated.

## ARGUMENT

**I.    The district court abused its discretion by considering untimely Government objections to the advisory Guideline range calculated in the PSR without a demonstration of good cause for the delay.**

### A.    Standard of Review

In an advisory Guideline system, "[t]he courts of appeals review sentencing decisions for unreasonableness." *United States v. Booker*, 543 U.S. 220, 261 (2005). This Court has held that "[o]ur appellate review of the reasonableness of a sentence focuses on whether the sentencing court abused its discretion in imposing the chosen sentence." *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007). The first step in that review is for this Court to determine whether there have been any "significant procedural errors." *Ibid.* Whether good cause was shown to excuse the late filing of objections to the advisory Guideline calculations is committed to the

11

discretion of the district court. *See, e.g., United States v. Angeles-Mendoza*, 407 F.3d 742, 748 (5th Cir. 2005); *United States v. Kleinman*, 880 F.3d 1020, 1039 (9th Cir. 2017).

**B.    The district court's consideration of the Government's untimely arguments did not comply with the Rules of Criminal Procedure.**

Rule 32 of the Rules of Criminal Procedure sets forth the procedure for production of the PSR and how the parties can object to its contents. As relevant to this appeal, Rule 32(f)(1) provides that "[w]ithin 14 days after receiving the presentence report, the parties must state in writing any objections, including objections to . . . . sentencing guideline ranges . . . contained in or omitted from the report." Those objections must be disclosed to the opposing party, as well as the probation officer. Fed. R. Crim. P. 32(f)(2). Once objections are received, the probation officer "may . . . revise the presentence report as appropriate." Fed. R. Crim. P. 32(f)(3). An exception to those timing rules is found in Rule 32(i)(1)(D), which allows that a district court "may, *for good cause shown*, allow a party to make a new objection at any time before sentence is imposed." (emphasis added).

Sentencing in this case initially proceeded in accordance with the provisions of Rule 32. On October 6, 2022, the same day Henderson entered his guilty plea to the charge in the superseding indictment, the district court entered an order memorializing the plea and setting a schedule for production and finalization of the PSR. JA011-014. That order directed a draft PSR to be prepared by December 1,

2022, objections be submitted by December 15, and a final PSR prepared by December 29, 2022. JA013. The draft PSR, which included a two-level enhancement for possession of a firearm, was prepared by November 29, 2022. JA061.

On December 12, 2022, in response to an unobjected-to motion by the Government and because of good cause shown, the district court extended the deadlines for filing objections to March 2, 2023. JA015-016. By letter to the probation officer, on which the Government was copied, Henderson filed his objections on December 29, 2022. JA070-074. Among Henderson's objections was an objection to the two-level enhancement for possession of a firearm. JA071-073. On January 12, 2023, the district court entered a second order in relation to sentencing deadlines based on a second unopposed motion of the Government. In that order the district court granted the motion with regards to the date of the sentencing hearing, but denied the motion with regard to other deadlines, including for objections to the PSR, as "the parties received the draft PSR in December 2022." JA017-018. The Government did not file any objections, either to the draft PSR or in response to Henderson's objections, prior to the deadline set by the district court. Sentencing memoranda were filed, in accordance with the district court's deadlines, on March 23, 2023. JA019-029. In its memorandum, the Government did not take issue with the advisory Guideline range of 121 to 151

13

months set forth in the revised PSR, which did not include any enhancements for possession of a firearm or leadership role, and recommended a reduction for acceptance of responsibility. JA028.

The next day, the district court entered an order in response to this Court's decision in *United States v. Jones*, 60 F.4th 230 (4th Cir. 2023). JA030-031. In *Jones*, this Court concluded that the statutory "safety valve" was available to a defendant, like Henderson, who does not have more than 4 criminal history points, a prior 3-point offense, and a prior 2-point violent offense. *Id.* at 231-232. The district court's order noted that under *Jones* Henderson was not excluded on that basis and recognized that "the parties have not addressed the applicability of the safety valve." JA030. It found "it is appropriate to give the parties the opportunity to address (a) the implications of *Jones* and (b) whether Mr. Henderson meets the remaining safety valve criteria." *Ibid.* In doing so, the district court noted that "the PSR did not recommend enhancements related to firearms or a leadership or managerial role, and did recommend an acceptance of responsibility reduction." *Ibid.* The district court's order did not invite briefing on those issues, however, only on the impact of *Jones* and whether Henderson qualified for relief under the safety valve.

The Government's memorandum in response to the district court's order, filed on April 7, 2023, went well beyond the scope of the district court's order, arguing not only that Henderson did not qualify for safety valve relief, but that his

sentence should be enhanced for possession of a firearm and a leadership role and that he should be denied credit for acceptance of responsibility. JA033-037. In conclusion, the Government argued that Henderson's advisory Guideline range was 262 to 327 months in prison, more than doubling the sentence it argued the district court should impose in its initial sentencing memorandum. JA037. Nowhere in its memorandum did the Government recognize that its objections to the PSR's advisory Guideline calculations came more than a month after the district court's deadline for such objections, much less months after Henderson's objections put the Government on notice regarding the firearm enhancement. Nowhere did the Government argue good cause excused its late assertion of its objections. In short, the Government failed completely to abide by the requirements of Rule 32 and the orders entered by the district court pursuant to it.

Henderson objected to the district court considering the Government's tardy objections, pointing out that it had three prior occasions to raise them and did not. JA042. The district court's response to that objection was tangential and not rooted in the requirements of Rule 32. The district court dismissed Henderson's objection, finding, without any analysis, that the Government did not waive its arguments "where the Court invited further briefing on these issues." JA053. Except the district court did not "invite further briefing" on Guideline calculation issues – it invited further briefing on the issue of whether Henderson was eligible for safety

valve relief. JA30.[5] The district court also noted its independent duty to correctly

calculate the advisory Guideline range. JA053; *United States v. Aguilar-Ibarra*, 740

F.3d 587, 591 (11th Cir. 2014). That duty does not relieve the parties of the burden

of presenting timely objections and arguments about the Guideline range. If it did,

the requirements of Rule 32 would be a nullity instead of regularly invoked to cut

off untimely raised arguments. *See, e.g.,*, *United States v. Lindsey*, 827 F.3d 733, 736-

738 (8th Cir. 2016)(refusing to consider untimely raised objections to Armed Career

Criminal Act predicate offenses where defendant did not attempt to make any

showing of good cause); *Aguilar-Ibarra*, 740 F.3d at 590-591 (applying plain error

review where defendant did not show good cause below for untimely objection to

Guideline calculation); *United States v. Eastteam*, 426 F.3d 1301, 1303 (10th Cir.

2005)(defendant did not demonstrate good case for objection made first time at

sentencing when the "Government made known to Defendant through the PSR

that it did not intend to seek the third-level reduction" for acceptance of

responsibility); *United States v. Wheeler*, 322 F.3d 823, 827 (5th Cir. 2003)(applying

plain error review where defendant "offered no explanation whatsoever for his

---

[5] This is why the district court's statement that Henderson's "waiver argument is a bit disingenuous," JA053, is incorrect. Henderson's supplemental sentencing memorandum addressed the issue the district court highlighted – the safety valve issue – and nothing more, while the Government's supplemental memorandum was much more wide ranging.

failure to raise his objections until the day before his sentencing hearing, which was well beyond the prescribed 14-day period"); *United States v. Chung*, 261 F.3d 536, 539 (5th Cir. 2001)(where good cause is not shown district court is "free to disregard" untimely objections).

Assuming, *arguendo*, that the district court's order raising the safety valve issue made the issue of a leadership role enhancement under the Guidelines relevant – given that 18 U.S.C. § 3553(f)(4) specifically ties that safety valve factor to the Guidelines – it did not do the same for the firearm enhancement or acceptance of responsibility. As the district court correctly noted in its opinion resolving the Government's arguments, that a firearm enhancement is applied under the Guidelines does not mean a defendant is excluded from safety valve relief under 18 U.S.C. § 3553(f)(2) because that section looks only to the offense of conviction, not relevant conduct. JA054-055, adopting the reasoning of *United States v. Hodgkiss*, 960 F.3d 1110 (8th Cir. 2020). And, as the district court correctly noted, 18 U.S.C. § 3553(f)(5) "requires more than acceptance of responsibility." JA057. Given that those two safety valve factors are divorced from Guideline calculation issues, the Government's arguments to impose the firearm enhancement and preclude a reduction for acceptance of responsibility cannot have been made in response to an invitation by the district court to address the issue of Henderson's eligibility for the safety valve.

17

Ultimately, this is a case where the Government dropped the ball and the district court handed it back to them and allowed them to run with it. A preliminary PSR was sent to the parties on November 29, 2022. JA061. It did not recommend an enhancement for a leadership role – the Government did not object. It did recommend a reduction for acceptance of responsibility – the Government did not object. It did recommend a two-level enhancement for possession of a firearm – to which Henderson *did* object, in a lengthy letter that was shared with the Government as well as the probation officer (who ultimately agreed with Henderson's argument and removed the enhancement). In its initial sentencing memorandum the Government did not object to the calculated advisory Guideline range of 121 to 151 months and argued for a sentence within that range. JA028. It was not until the district court's order highlighting the safety valve issue that the Government made objections to the PSR, without any attempt to explain why good cause existed for it to do so at such a late stage. The district court abused its discretion in allowing the Government to make those arguments, considering them, and ultimately enhancing Henderson's sentence as a result. Therefore, his sentence is procedurally unreasonable and should be vacated.

II.    **The district court clearly erred by concluding that Henderson exercised dominion and control over the firearms seized from Cagle and therefore constructively possessed them, imposing a two-level Guideline enhancement as a result.**

A.    **Standard of Review**

In an advisory Guideline system, "[t]he courts of appeals review sentencing decisions for unreasonableness." *United States v. Booker*, 543 U.S. 220, 261 (2005). This Court has held that "[o]ur appellate review of the reasonableness of a sentence focuses on whether the sentencing court abused its discretion in imposing the chosen sentence." *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007). The first step in that review is for this Court to determine whether there have been any "significant procedural errors." *Ibid.* District courts must "still calculate the correct guidelines range in order to fashion a reasonable sentence." *United States v. Hargrove*, 478 F.3d 195, 197 (4th Cir. 2007). A determination that an enhancement under § 2D1.1(b)(1) applies "is essentially a factual one that we review under the clearly erroneous standard." *United States v. Banks*, 10 F.3d 1044, 1057 (4th Cir. 1993).

B.    **Possession of a firearm to support an enhancement under U.S.S.G. § 2D1.1(b)(1) can be constructive, if the evidence shows the defendant exercised dominion and control over that firearm.**

The Sentencing Guidelines require that the base offense level of a defendant who has been convicted of a drug crime be increased by two levels if "a dangerous

weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). Guideline commentary further states that the increase "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.3. This Court has held that "possession of a weapon during commission of an offense is all that is needed to invoke the enhancement." *United States v. Apple*, 962 F.2d. 335, 338 (4th Cir. 1992).

This Court has recognized that firearms are "tools" of the drug trade and that possession of them often goes hand in hand with the sale of drugs. *United States v. Manigan*, 592 F.3d 621, 629 (4th Cir. 2010)(collecting cases). However, that recognition does not mean that an enhancement for possession of firearms is appropriate in every drug case when firearms are present. *See United States v. Clay*, 376 F.3d 1296, 1302-1303 (11th Cir. 2004)(enhancement should not apply "absent some specific connection between the firearms and the particular drug activity").

Possession "can be actual or constructive." *United States v. Moye*, 454 F.3d 390, 395 (4th Cir. 2006). "Constructive" possession occurs "if it is shown 'that the defendant exercised, or had the power to exercise, dominion and control over the item.'" *Ibid.*, *quoting United States v. Rusher*, 966 F.2d 868, 878 (4th Cir. 1992). In this case there was no firearm recovered from Henderson or his possessions when he was arrested. Nor is there any evidence that Henderson physically possessed a firearm during any drug trafficking activity. The only basis for applying the two-

level enhancement is that Henderson exercised dominion and control over firearms from jail. The record does not support such a conclusion and the district court clearly erred in making it.

### C. The evidence does not show that Henderson exercised dominion and control over a firearm in connection with a drug trafficking offense.

When evaluating whether the two-level enhancement applied to this case, the district court concluded that Henderson had "not disputed the facts in the PSR," which were that in "a recorded call, he instructed someone to give his brother a black gun to leave in the house and a silver gun to carry with him," and that this "someone was also managing his drug business, and his brother was coming to . . . assist with the drug trafficking operation." JA053-054. The district court's conclusion was clearly erroneous, partly due to its conclusion that Henderson had not disputed the facts in the PSR.

Henderson had disputed those facts at the proper time for doing so – after the initial PSR was disclosed to the parties. As part of his objections to the PSR, Henderson objected "to the PSR's recitation of the facts and circumstances regarding the guns." JA071. Specifically, Henderson objected to relying on Cagle's interview with police as the basis for imposing the enhancement, an argument the probation officer found credible when they removed the two-level enhancement from the PSR.

21

At issue was the meaning of Henderson's discussion with Cagle about "black and silver 'puppies,'" which Henderson directed Cagle to give to his brother. JA121. Investigators believed "puppies" was code for firearms, but had no means of proving that. They went to Cagle and interviewed her[6] and she, eventually, agreed that "puppies" were guns and turned over a pair of handguns to the police. JA121-122. That came during a meeting during which officers stressed to Cagle that she was in a very bad spot and suggested that she needed to help herself by cooperating with them. JA071. Furthermore, the guns recovered from Cagle did not match those allegedly described in the phone calls with Henderson. JA072.

At the time it imposed the enhancement, however, the district court did not have before it Henderson's objection to the facts and circumstances set forth in the draft PSR to support the enhancement. That objection was contained in a letter provided to the probation office and the Government, which ultimately led to the probation officer agreeing with Henderson and removing the enhancement. J070-074. When the district court invited additional briefing on the safety valve, Henderson had no need to further challenge the facts and circumstances supporting an enhancement that was not contained in the PSR and to which the Government

---

[6] Body camera footage of the interview with Cagle was provided in discovery and formed the basis for Henderson's objection to the two-level enhancement. JA071. The Government has never taken issue with Henderson's description of the interview set forth therein.

had not objected.  It was not until after the Government asserted its objection –
for the first time – in response to the district court's order inviting briefing on the
safety valve and the district court issued its ruling sustaining that objection that
Henderson was able to place on the record his letter to the probation officer setting
forth his position on the matter.[7]

Had the district court been presented with Henderson's letter challenging
the facts and circumstances in the draft PSR that initially supported the
enhancement, it may have reached a different conclusion.  However, even on the
facts recited in the final PSR itself, there is no evidence that Henderson exercised
any dominion or control over the firearms recovered from Cagle in connection with
any drug trafficking activity. The district court clearly erred in concluding otherwise.

### D.    The district court's error impacted Henderson's sentence.

At sentencing, the district court calculated Henderson's final offense level to
be 37 which, combined with a Criminal History Category IV, produced an advisory
Guideline range of 292 to 365 months in prison. The district court then varied
downward, in recognition of the flaws inherent in the methamphetamine Guideline,

---

[7] It is standard practice within the Southern District of West Virginia (and consistent
with the requirements of Rule 32 and the district court's Order, JA013) for
objections to the draft PSR to be provided only to the probation office and the
opposing party rather than filed on the public docket.  Unresolved objections are
then preserved in an addendum to the final PSR pursuant to Rule 32(g).

so that the "applicable advisory guideline range is 188 to 235 months." JA082. The sentence the district court imposed, 188 months, was the bottom of that range. JA094.

Had the district court correctly concluded that the two-level enhancement for possession of a firearm did not apply, Henderson's final offense level would have been 35, ultimately producing an advisory Guideline range (adjusted by the district court's variance) of 151 to 188 months in prison. There is nothing in the record to support a conclusion that, faced with that Guideline range, the district court would have done something other than what it did in this case – impose a sentence at the bottom of its calculated Guideline range. The district court's erroneous application of the two-level enhancement, therefore, resulted in Henderson being sentenced to 27 months more in prison than what would have otherwise been imposed.

## CONCLUSION

This Court should vacate Henderson's sentence for two reasons. First, the district court did not comply with the requirements of Rule 32 of the Rules of Criminal Procedure by considering the Government's untimely objections to the PSR. Second, the district court clearly erred by imposing a two-level enhancement on Henderson based on its conclusion that he possessed a firearm in connection

with his drug trafficking offense. Both errors led to the imposition of a procedurally

unreasonable sentence that this Court should vacate.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 34(a) of the Federal Rules of Appellate Procedure,

Henderson hereby requests oral argument. Oral argument would provide a full and

fair airing of these issues and provide this Court with the most assistance for

resolving this case and providing guidance for courts and parties going forward

Respectfully submitted,

**MICHAEL HENDERSON**

By Counsel

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

<u>**s/Wesley P. Page**</u>
Wesley P. Page
Federal Public Defender
Room 3400, United States Courthouse
300 Virginia Street East
Charleston, West Virginia 25301
E-mail: wesley_page@fd.org

<u>**s/Jonathan D. Byrne**</u>
Jonathan D. Byrne
Assistant Federal Public Defender
Office of the Federal Public Defender
Room 3400, United States Courthouse
300 Virginia Street East
Charleston, West Virginia 25301
E-mail: jonathan_byrne@fd.org

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND LENGTH LIMITATIONS

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

this brief contains *5783* words

2.    This brief complies with the typeface and type style requirements because:

this brief has been prepared in a proportionally spaced typeface using *Microsoft Word 2016* in *14 pt Garamond*.

**DATE:**    June 23, 2023

s/Wesley P. Page
Wesley P. Page
Federal Public Defender
Room 3400, United States Courthouse
300 Virginia Street East
Charleston, West Virginia 25301
E-mail: wesley_page@fd.org

s/Jonathan D. Byrne
Jonathan D. Byrne
Appellate Counsel
Room 3400, United States Courthouse
300 Virginia Street East
Charleston, West Virginia 25301
E-mail: jonathan_byrne@fd.org